UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 12-CV-21769-SEITZ/SIMONTON

ZONYA C. RAY,

    Plaintiff,

v.

CITY OF OPA-LOCKA, FLORIDA, et al.,

    Defendants.
_____/

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

THIS MATTER is before the Court on Defendant, City of Opa-Locka's, Motion for Summary Judgment [DE-30], Plaintiff's Response [DE-35], and Defendant's Reply [DE-40]. Plaintiff's Second Amended Complaint [DE-18] alleges four counts against Defendant City of Opa-Locka.[1] All four claims are based on alleged age discrimination: (1) age discrimination by failing to promote in violation of the Age Discrimination in Employment Act (ADEA); (2) age discriminatory hostile work environment under the ADEA; (3) age discriminatory refusal to promote under Florida Statute; and (4) age discriminatory hostile work environment under Florida Statute. Counts II and IV were dismissed by prior order. *See* DE-25. Defendant now seeks summary judgment on the remaining claims. Because Plaintiff has not presented direct evidence of age discrimination and because Plaintiff has not established her prima facie case, Defendant's motion is granted.

---

[1] The other defendant, Bryan K. Finnie, is not named in the Second Amended Complaint.

I.     **UNDISPUTED MATERIAL FACTS**[2]

*The Parties*

Defendant is a municipality located in Miami-Dade County, Florida. It is governed by a commission, which, among other things, appoints a City Manager. The City Manager is responsible for appointing, hiring, promoting, supervising, and removing all City employees, with a few exceptions irrelevant to this case. (DE-32-1.) Thus, the City Manager had the authority to promote employees to the position of Director of the Department of Parks and Recreation (Parks Department).

Plaintiff was born on October 27, 1967. (Pl. Dep.[3] 6:16.) She graduated from Miami Senior High in August 1986. (*Id.* at 9:11-14.) After high school, Plaintiff attended beauty school and studied cosmetology. (*Id.* at 13:2-18.) Plaintiff did not receive a degree from beauty school. (*Id.*) Prior to working for Defendant, Plaintiff worked as a telephone operator and at Burger King. From 2001 through 2003, Plaintiff attended Miami-Dade College and studied physical education. (*Id.* at 10:4-8.) She has not completed her associates degree. (*Id.* at 12:4-10.)

*Plaintiff's Employment With Defendant*

On November 14, 1988, Defendant hired Plaintiff as a part-time Recreation Leader in the Parks Department. (*Id.* at 14:17-25.) A Recreation Leader is responsible for ensuring that the

---

[2]In her Statement of Undisputed Material Facts in Opposition to Summary Judgment [DE-37], Plaintiff did not controvert any of the facts contained in Defendant's Statement of Undisputed Material Facts [DE-31]. Accordingly, pursuant to Local Rule 56.1(b) all material facts set forth in Defendant's statement which are supported by the record are deemed admitted.

[3]Pl. Dep. refers to Plaintiff's deposition which is filed at DE-32-2.

City's parks are clean and well-maintained, for monitoring events and activities held in the parks, and for supervising children enrolled in the youth sports leagues and the City's after-school programs. (DE-32-2, Ex. 2.) Recreation Leaders do not regularly supervise other City employees. (*Id.* at 26:23-27:6.) On October 30, 1990, Plaintiff became a full-time Recreation Leader. On April 3, 2001, Plaintiff was appointed to the position of Acting Recreation Supervisor. (*Id.* at 28:2-6.) Recreation Supervisors perform the same duties as Recreation Leaders but also supervise the Recreation Leaders. (*Id.* at 23:7-12.) In the Acting Recreation Supervisor position, Plaintiff supervised one Recreation Leader. (*Id.* at 44:17-18.)

During the course of her employment with Defendant, Plaintiff was disciplined several times, the last time was in 1999. (DE-32-2, Exs. 4-9.) Plaintiff's January 2008 annual performance review by Charles Brown, then Director of the Parks Department, rated Plaintiff as "above-satisfactory" in most categories and "outstanding" for initiative/cooperation and for personal appearance. (DE-32-2, Ex. 14.) Plaintiff believes that Brown was a fair evaluator. (Pl. Dep. at 56:15-17.)

*Starex Smith*

Starex Smith (Smith) graduated from Florida International University (FIU) with a four-year Bachelor of Public Administration. (DE-32-27.) While still a student at FIU, Smith became involved with the Parks Department when he created a mentoring program run through the Parks Department. (Pl. Dep. 59:25-59:8.) Smith was initially hired by Defendant on March 4, 2005, as a Recreation Leader. (DE-32-9.) At the time, Jannie Beverly was the City Manager. (*Id.*) On June 13, 2005, Smith was promoted by City Manager Beverly to the position of Assistant to the City Manager. (DE-32-10.) This position required Smith to perform administrative duties, to

3

exercise independent judgment, and to give policy guidance and interpretation to department heads. (DE-32-11.) Smith's 2008 performance evaluation rated Smith as "clearly outstanding" in all areas. (DE-32-17.) City Manager Beverly, who completed the evaluation, noted that Smith was "doing a good job supervising staff," that he "does an outstanding job of expressing ideas and information both verbally and in writing," and that he "is a rising star." (*Id.*) At some point Smith was also appointed Crime Prevention Director. (DE-32-18.) As Crime Prevention Director, Smith supervised approximately 8-10 people. (Pl. Dep. 69:15-70:19.)

*City Manager Finnie's Reorganization of Departments and Smith's Promotion*

In November 2008, Bryan Finnie became City Manager. As City Manager, Finnie decided to make several organizational and personnel changes to improve operational efficiency. (DE-32-26, ¶¶ 4-5.) In July 2009, City Manager Finnie made the changes, which included appointing Smith as Acting Parks Director. (*Id.* at ¶¶ 4 & 7.) The position of Parks Director requires the following qualifications:

> Graduation from college with major course work in recreation or a related field and considerable experience in the supervision of recreation programs; or any equivalent combination of training and experience which provides the required knowledges [sic], skills and abilities.

(DE-32-7.) Finnie states that he chose Smith as Parks Director because Finnie wanted to improve the Parks Department's outreach and mentoring programs and Smith had more experience in these areas because of his development of the mentoring program while still in college and his leadership in the Crime Watch division. (*Id.* at ¶ 10.) Additionally, Finnie considered Smith's four-year degree and the recommendation of former City Manager Beverly. (*Id.* at ¶¶ 11 & 12.) With his appointment as Director of the Parks Department, Smith was in

4

charge of both the Parks Department and the Crime Prevention division. (*Id.* at ¶ 15.)

Smith's appointment as Parks Director was announced at a July 2009 meeting with City Manager Finnie, Charles Brown, who was the former Parks Department Director and now Assistant Director, Smith, and the employees of the Parks Department and the Crime Prevention division. (Pl. Dep. 73:12-74:2.) At the meeting, City Manager Finnie announced that there were going to be some changes to the Parks Department including the appointment of Smith as Director and Brown as Assistant Director. (*Id.*) Plaintiff, in response to Finnie asking if anyone had any problems with the changes, told Finnie:

> Well, I have a problem with it because I have been here for several years. And I have the experience to be able to run Parks myself. I wasn't given the opportunity to have the interview when they posted the job in the beginning. Now, that job, during the changes as far as becoming acting director, he is not qualified more than me or Mr. Aikens.

(*Id.* at 74:5-12.) According to Plaintiff, Finnie responded to her statement by saying:

> I know you all have been here a long period of time, but I feel with him being young and to do the traveling basketball and all these different things . . . , out with the old and in with the new.

(*Id.* at 74:12-17.) Smith's appointment to Acting Parks Director was just one of several organizational and personnel changes Finnie made in July 2009. (DE-32-19.)

On December 10, 2009, Plaintiff submitted a complaint form to Defendant stating that the Parks Department had become a hostile environment after Smith was appointed Parks Director. (DE-32-2, Ex. 17.) On December 10, 2009, Plaintiff wrote a letter to the Human Resources Department also complaining about a a hostile environment. (DE-32-2, Ex. 16.) Other employees also filed similar complaints. (DE-32-23.)

In December 2009, Finnie resigned as City Manager and in January 2010, Clarence

Patterson was appointed City Manager. On June 22, 2010, Patterson promoted Smith from Acting Parks Director to Director. (DE-32-2, Ex. 19.) In the memo about the promotion, Patterson noted that Smith had been "instrumental in revamping the parks and recreation facilities. In addition to expanding programs offered to the community." (*Id.*)

On September 5, 2010, Plaintiff filed a Charge of Discrimination with the Florida Commission on Human Relations. Plaintiff subsequently filed this suit.

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *HCA Health Servs. of Ga., Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 991 (11th Cir. 2001). Once the moving party demonstrates the absence of a genuine issue of material fact, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*quoting* Fed. R. Civ. P. 56(e)). The Court must view the record and all factual inferences therefrom in the light most favorable to the non-moving party and decide whether "'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (*quoting Anderson*, 477 U.S. at 251-52)).

In opposing a motion for summary judgment, the non-moving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue for trial. *See* Fed. R. Civ. P.

56(c), (e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A mere "scintilla" of evidence supporting the opposing party's position will not suffice; instead, there must be a sufficient showing that the jury could reasonably find for that party. *Anderson*, 477 U.S. at 252; *see also Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

### III. DISCUSSION

Defendant maintains that it is entitled to summary judgment because Plaintiff cannot establish a prima facie case of age discrimination and because Defendant has a legitimate, non-discriminatory reason for not promoting Plaintiff. Plaintiff responds that Defendant is not entitled to summary judgment because she has presented direct evidence of age discrimination, she can establish her prima facie case, and Defendant's proffered legitimate, non-discriminatory reason for not promoting Plaintiff is pretextual.

Plaintiff and Defendant disagree about the nature of Plaintiff's evidence to support her alleged discrimination. Plaintiff asserts that she has presented direct evidence of the discrimination, while Defendant asserts that any evidence of discrimination is circumstantial. The type of evidence determines the method of analysis the Court must apply.

If a plaintiff establishes by direct evidence that a discriminatory animus played a significant role in the employment decision, then the employer will be liable for discrimination unless it can establish that the employer would have made the same decision absent the improper motive. *Haynes v. W.C. Caye & Co.*, 52 F.3d 928, 931 (11th Cir. 1995). However, if a plaintiff's claim is based on circumstantial evidence, a court uses the burden shifting analysis set out in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000) (applying *McDonnell-Douglas* analysis to ADEA cases).

Under *McDonnell-Douglas*, a plaintiff has the burden of establishing a prima facie case of discrimination. *Id.* at 802. A plaintiff establishes a prima facie case of age discrimination by establishing that she (1) was a member of the protected age group, (2) was subjected to adverse employment action, (3) was qualified to do the job, and (4) was replaced by or otherwise lost a position to a younger individual. *Chapman*, 229 F.3d at 1024. The burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. *Wilson v. B/E Aerospace, Inc.* 376 F.3d 1079, 1087 (11th Cir. 2004). If the employer meets this burden, then the burden shifts back to the plaintiff to offer evidence that the alleged reason given by the employer is a pretext for illegal discrimination. *Id.* Because, as set out below, Plaintiff has not presented direct evidence of discrimination, she must establish her case using the *McDonnell-Douglas* burden-shifting analysis, which she has not done.

### A. Plaintiff Has Not Presented Any Direct Evidence of Discrimination

While Defendant maintains that the *McDonnell-Douglas* framework applies to this case, Plaintiff argues that she has presented direct evidence of discrimination and, therefore, she need not establish a prima facie case under *McDonnell-Douglas*. Specifically, Plaintiff argues that Finnie's statement that "I know you all have been here a long period of time, but I feel with him being young and to do the traveling basketball and all these different things . . . , out with the old and in with the new" constitutes direct evidence of age discrimination.

The Eleventh Circuit defines "direct evidence" as "evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption." *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998). "[O]nly the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some

impermissible factor constitute direct evidence of discrimination." *Wilson*, 376 F.3d at 1086 (internal quotations omitted). If the statement only suggests, but does not prove, a discriminatory motive, then it constitutes circumstantial evidence. *Id.*

Here, Finnie's statement is not direct evidence of a discriminatory intent. It is not clear from the statement whether Finnie's reference to old and new referred to the fact that many of the employees had been with Defendant for a longer period of time than Smith or whether it referred to the fact that Smith was younger than the other employees. Further, while, Finnie did reference the fact that Smith was young, nothing he said indicated that Smith's age was the reason he got the job and Plaintiff did not. Thus, because Finnie's statement does not directly establish the existence of a discriminatory intent without inference or presumption, it is not direct evidence of an impermissible discriminatory motive. *Compare Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1359 (11th Cir. 1999) (finding that the statement by decision-maker, "what the company needed was aggressive *young* men . . . to be promoted" did not constitute direct evidence of age discrimination), *and Burrell v. Board of Trustees of Georgia Military College*, 125 F.3d 1390, 1393 (11th Cir. 1997) (holding that statement by decision-maker that he wanted to hire a man for the position because too many women filled the officer positions was not direct evidence of gender discrimination), *with Caban-Wheeler v. Elsea*, 71 F.3d 837, 843 (11th Cir. 1996) (finding that statement by decision-maker that he did not want someone like plaintiff in position but wanted a Black person in position constitutes direct evidence of race discrimination). Further, Plaintiff's reliance on *Mora v. Jackson Memorial Foundation, Inc.*, 597 F.3d 1201, 1204 n.1 (11th Cir. 2010), to establish that Finnie's remark constitutes direct evidence is misplaced because the *Mora* Court specifically stated that it was not determining whether the plaintiff's

9

evidence was direct or circumstantial. Consequently, Plaintiff has not presented direct evidence of discrimination and her claims must be analyzed under the *McDonnell-Douglas* framework.

### B. Plaintiff Cannot Establish Her Prima Facie Case

As set forth above, a prima facie case requires Plaintiff to establish that she (1) was a member of the protected age group, (2) was subjected to adverse employment action, (3) was qualified to do the job, and (4) was replaced by or otherwise lost a position to a younger individual. *Chapman*, 229 F.3d at 1024. In a failure to promote situation, a plaintiff must show that she was passed over for the promotion in favor of an equally or less qualified individual who was not part of the protected age group. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1089 (11th Cir. 2004). Plaintiff has not shown that Smith was equally or less qualified than she. Thus, Plaintiff cannot establish her prima facie case.

Defendant has presented evidence that Smith was more qualified than Plaintiff, namely, that Smith was better educated with a four-year degree in public administration; Smith had a better evaluation than Plaintiff; Smith was a strong communicator; Smith had more experience in areas that Defendant wished to expand, such as outreach and mentoring, having developed a mentoring program for the Parks Department; and Smith had more management level experience than Plaintiff, including more experience supervising others. Plaintiff has not presented any evidence to contradict Smith's qualifications. In response, Plaintiff points to her years of experience with the Parks Department, which Smith lacked.[4] However, those years of experience

---

[4] Plaintiff also argues that Defendant's failure to post the job, in violation of Defendant's own policies, Smith's incessant derogatory remarks, and Smith's alleged inappropriate interest in boys also establish age discrimination. However, Plaintiff has not shown how Defendant's failure to post the job leads to an inference of age discrimination. Nor has Plaintiff shown that Smith was a decision maker in his own promotion. As a non-decision maker, Smith's comments

do not indicate that Plaintiff was equally or better qualified than Smith, particularly given that Smith had more administrative experience, more supervisory experience, and more experience in other areas that, after the reorganization, became part of the responsibilities of the Parks Director, such as crime prevention. Consequently, Plaintiff has failed to establish her prima facie case. Therefore, the Court need not address the rest of the *McDonnell-Douglass* analysis. Accordingly, it is hereby

ORDERED that:

1. Defendant, City of Opa-Locka's, Motion for Summary Judgment [DE-30] is GRANTED.

2. The Court will enter a separate judgment.

3. All pending motions not otherwise ruled upon are DENIED as moot.

4. This case is CLOSED.

DONE and ORDERED in Miami, Florida, this 1st day of July, 2013.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc:   All Counsel of Record

---

cannot support a claim of failure to promote. *See Steger v. General Electric Co.*, 318 F.3d 1066, 1079 (11th Cir. 2003) (holding that statements by nondecisionmakers unrelated to the decisional process are not evidence of discrimination). Finally, Plaintiff has not presented any evidence that Defendant knew of the allegations about inappropriate behavior prior to Smith's promotion to Acting Director. Thus, none of these arguments support Plaintiff's claims.

11